IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

CHARITY REAVES                                                                                                  PLAINTIFF

V.                              Civil No. 2:21-cv-02178-PKH-MEF

KILOLO KIJAKAZI, Acting Commissioner,
Social Security Administration                                                                         DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Charity Reaves, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (the "Commissioner") denying her claim for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

**I.       Procedural Background**

Plaintiff protectively filed her applications for DIB and SSI on April 23, 2019, alleging disability since February 6, 2019[1], due to an injury to her right wrist; bilateral carpal tunnel syndrome ("CTS"); learning disorders; back pain status post Harrington rod placement for scoliosis; arthritis; depression, anxiety, post-traumatic stress disorder ("PTSD"); and social phobia.  (ECF No. 13, pp. 112-113, 130-131, 149, 253-266, 289, 298-299, 328-329).  The Commissioner denied Plaintiff's applications initially and on reconsideration, and an

---

[1] Plaintiff's prior applications were denied by an ALJ on November 25, 2015.  (ECF No. 13, pp. 88-99).

administrative hearing was held on August 5, 2020. (ECF No. 13, pp. 40-83). Plaintiff was present and represented by counsel.

On her alleged onset date, Plaintiff was 33 years old and possessed the equivalent of a high school diploma. (ECF No. 13, pp. 26, 290). Although she had past relevant work ("PRW") experience as a hand packager, cashier II, hospital cleaner, security guard, and cashier/checker, she performed no substantial gainful activity after her alleged onset date. (*Id*. at 25, 201, 311-318, 330-337).

On October 21, 2020, an Administrative Law Judge ("ALJ"), Elizabeth McGee, identified Plaintiff's anxiety, depression, PTSD, obsessive compulsive disorder ("OCD"), scoliosis, degenerative disk disease ("DDD"), arthritis of the right wrist status-post fracture; CTS; migraines; chronic pain; fatigue; and obesity as severe impairments. (ECF No. 13, p. 17). She concluded, however, that Paintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*. at 18). ALJ McGee then found Plaintiff capable of performing light work, with occasional balancing, stooping, kneeling, crouching, crawling, and climbing and frequent handling and fingering bilaterally. (*Id*. at 21). Further, she restricted Plaintiff to repetitive simple, and routine tasks, with simple, direct, and concrete supervision, and social interaction incidental to the work performed. With the assistance of a vocational expert ("VE"), ALJ McGee determined Plaintiff could still perform work as a routing clerk, collator operator, and photocopy machine operator. (*Id*. at 26).

On August 27, 2021, the Appeals Council denied Plaintiff's request for review. (ECF No. 13, pp. 6-11). Plaintiff subsequently filed her Complaint to initiate this action. (ECF No. 3). Both

parties have filed appeal briefs (ECF Nos. 16, 19), and the matter is ripe for resolution. The case has been referred to the undersigned for Report and Recommendation.

## II.     Applicable Law

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014). If there is substantial evidence in the record to support the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id*.

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The fact finder will only consider Plaintiff's age, education, and work experience in the light of her residual functional capacity if the final stage of the analysis is reached. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III. Discussion

In a single issue on appeal, the Plaintiff insists that the ALJ's residual functional capacity ("RFC") assessment is not supported by substantial evidence. RFC is the most a person can do despite that person's limitations. 20 C.F.R. §§ 404.1545, 416.945. A disability claimant has the burden of establishing her RFC. *Vossen*, 612 F. 3d at 1016. "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The United States Court of Appeals for the Eighth Circuit has held that RFC is a medical question." *Miller*, 784 F.3d at 479 (citing *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, the ALJ's RFC determination must be supported by

medical evidence that addresses the claimant's ability to function in the workplace. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

Records indicate Plaintiff had a history of lumbar spine issues dating back to at least 1998, at which time a Harrington rod was inserted to correct her scoliosis. (ECF No. 13, p. 392). A Harrington rod is a stainless-steel surgical rod that is attached to the spine with hooks inserted into the vertebra at the top of the curve and the vertebra at the bottom of the curve. *Harrington Rod*, *at* https://operativeneurosurgery.com/doku.php?id=harrington_rod (last accessed January 17, 2023). A review of the literature discussing Harrington rods reveals that they have a variety of long-term complications to include chronic back pain. Paonessa, Kenneth J. M.D. and Engler, Gordon L. M.D., *Back Pain and Disability After Harrington Rod Fusion to the Lumbar Spine for Scoliosis*, *at* https://journals.lww.com/spinejournal/Abstract/1992/08001/Back_Pain_and_Disability_After_Harrington_Rod.6.aspx (last accessed January 17, 2023).

Due to recurrent pain, in 2014, Dr. Brian Goodman administered lumbar epidural steroid injections ("LESIs") to the lumbar facet joints at the L2-3, L3-4, and L4-5 levels, thoracic facet injections to the T2-3, T3-4, and T4-5 levels on the right, and prescribed physical therapy ("PT"). (ECF No. 13, pp. 591-597, 603-604). Unfortunately, these injections provided only temporary pain relief and PT aggravated her symptoms. (*Id*. at 588-590). In December, Dr. Goodman prescribed lumbar facet radiofrequency ablation ("RA") on the right at the L2-3, L3-4, and L4-5 levels. (*Id*. at 606-609).

In late December, the Plaintiff fell and fractured her wrist. Dr. Timothy Garlow performed open reduction and fixation of a right wrist fracture in January 2015. (ECF No. 13, pp. 611-622). Follow-up exams documented good hardware placement with no evidence of failure or joint

violation. (*Id*. at 609-610). Dr. Garlow prescribed anti-inflammatories, Vitamin C, hand therapy, and a cockup splint.

Plaintiff established care with Dr. Timothy Buffey in May 2015. (ECF No. 13, pp. 444-445). She complained of daily back pain, reporting severe flare-ups every six months. Neither Zanaflex nor Robaxin had been helpful in the past. Plaintiff was interested in manipulative medicine, but Dr. Buffey opined this would be of limited benefit due to her lengthy history of issues and rod placement. On exam, he noted a large vertical scar on the midline wrist with normal bilateral wrist motion and tight hamstrings on the right. Dr. Buffey diagnosed chronic lower back pain with sciatica and muscle spasm, for which he prescribed Flexeril, core strengthening exercises, and weight loss and referred her for pain management.

In August 2019, Plaintiff sought out emergent treatment for lower back, ankle, and wrist pain. (ECF No. 13, pp. 511-555). She explained that she had recently moved to this area and did not yet have a primary care physician. The doctor diagnosed other chronic pain and prescribed Gabapentin and Aspirin.

On August 27, 2019, Plaintiff underwent a general physical exam with Dr. Chester Carlson. (ECF No. 13, pp. 557-561). She reported a fracture to her right wrist in 2014 that required surgical correction; bilateral CTS since 2015; arthritis in her back and wrist; and scoliosis of the spine with surgical correction in 1998. An exam revealed decreased (40/60 degrees) dorsiflexion and palmar flexion in the right wrist with no muscle weakness, atrophy, or sensory abnormalities, full grip strength bilaterally, and a normal gait/coordination. X-rays of her lumbar spine and wrists showed moderate degenerative changes throughout the lumbar spine with Harrington rods at the L3 level and hardware in the right wrist consistent with her history of surgical intervention. Dr. Carlson

diagnosed chronic back pain secondary to scoliosis and scoliosis status post Harrington rod placement, but he concluded her exam revealed no specific limitations.

On September 2, 2019, Dr. Alice Davidson conducted a review of the record and completed a physical RFC.  (ECF No. 13, pp. 121-122).  She concluded Plaintiff could lift/carry 20 pounds frequently and 10 pounds occasionally; sit, stand, and walk about 6 hours per day; and occasionally stoop and crouch.

Approximately two weeks later, Dr. Bao Dang treated Plaintiff for gradually worsening lumbar pain, that she rated as an 8 on a 10-point scale, despite her current treatment regimen.  (ECF No. 13, pp. 668-671).  Following a normal exam, Dr. Dang prescribed Tizanidine (a muscle relaxant) and referred her to an orthopedic surgeon for diagnoses of pain in both wrists and chronic low back pain with sciatica.

On October 31, 2019, Dr. Javed Rana treated the Plaintiff for complaints of lower back pain.  (ECF No. 13, pp. 686-689, 704-707).  Dr. Rana referred her to pain management.

The following month, Plaintiff was treated for upper respiratory symptoms.  (ECF No. 13, pp. 680-685, 700-703, 709).  Based on recent x-rays revealing mild posttraumatic degenerative arthritis in the radiocarpal joint, Dr. Rana concluded that her pain was due to CTS and recommended a nerve conduction study.  (*Id*. at 680-681, 709).  Although the record does not contain the results of this test, Plaintiff testified that she did undergo testing.  (*Id*. at 75).

On November 15, 2019, Dr. William Harrison conducted an independent review of the record and completed a physical RFC assessment affirming Dr. Davidson's earlier opinion.  (ECF No. 13, pp. 158-160).

Records from Dr. George Tompkins in December 2019 describe continued complaints of lower/middle back and bilateral wrist pain.  (ECF No. 13, pp. 801-802).  Unfortunately, these records are handwritten and difficult to read.

Plaintiff conferred with a neurologist, Dr. Steve-Felix Belinga, for shooting pains and numbness in her upper extremities on January 28, 2020.  (ECF No. 13, pp. 713-714).  An exam revealed positive Tinel's signs bilaterally with normal bulk, tone, and strength.  Dr. Belinga diagnosed bilateral CTS, ordered nerve conduction studies, prescribed wrist braces, prohibited her from lifting heavy items with either hand, and referred her back to Dr. Garlow.

During a follow-up visit with Dr. Belinga in March 2020, her physical exam remained unchanged.  (ECF No. 13, pp. 711-712).  Again, Dr. Belinga referred her to Dr. Garlow and continued the heavy lifting prohibition.

On March 5, June 22, and June 30, 2020, Dr. Tompkins administered SI joint injections. (ECF No. 13, pp. 781-783, 787-792, 807, 808).  He also administered carpal tunnel injections on June 25, July 7, and July 21, 2020.  (*Id*. at 775-780, 784-786, 805).  There is, however, no indication that any of these injections resulted in long-term pain relief.

Following a thorough review of the record, the undersigned agrees that remand is necessary to allow the ALJ to reconsider the Plaintiff's wrist impairment.  As noted, Plaintiff has a history of fracture to the right wrist requiring surgical correction.  Recent x-rays document posttraumatic degenerative arthritis in the radiocarpal joint.  This is consistent with both Dr. Carlson's notation of reduced dorsiflexion and palmar flexion in the right wrist and Dr. Belinga's notations of a positive Tinel's sign bilaterally (indicative of bilateral CTS), her need for wrist braces/splints, and her diagnosis of mild bilateral CTS.  Accordingly, we find these impairments to be inconsistent with a finding that the Plaintiff can frequently handle and finger bilaterally.

We also believe that the evidence concerning Plaintiff's lower back pain requires further consideration. Given her prior spinal surgery with placement of Harrington rods, it is possible that her current pain is related to the presence of the rods themselves. She testified to experiencing pain in the areas where the rods are fixed, the inability to bend, and difficulty climbing stairs and ramps. (ECF No. 12, pp. 66-67). This is bolstered by x-rays showing moderate degenerative changes throughout the lumbar spine and further complicated by her obesity. Therefore, we believe further consideration of the Plaintiff's ability to sit, stand, walk, bend, stoop, crouch, climb, balance, and stoop is required. To aid her in doing so, the ALJ is directed to request medical source statements from Plaintiff's treating physicians, Drs. Tompkins and Belinga. If they are unable or are otherwise unwilling to provide statements, the ALJ is directed to order a consultative orthopedic exam, complete with a thorough RFC assessment detailing both the Plaintiff's abilities and limitations in all areas of functioning.

### IV.    Conclusion

Based on the foregoing, I recommend reversing and remanding this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

**The parties have fourteen (14) days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. We remind the parties that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 19th day of January 2023.

/s/ Mark E. Ford
HON. MARK E. FORD
CHIEF UNITED STATES MAGISTRATE JUDGE